IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REBECCA F.,[1]  　　　　　　　　　　　　　　　No. 6:23-cv-00988-HZ

　　　　　Plaintiff,　　　　　　　　　　　　　　OPINION & ORDER

　　v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

　　　　　Defendant.

Katherine Eitenmiller
Mark A. Manning
Wells, Manning, Eitenmiller & Taylor, P.C.
474 Willamette Street
Eugene, OR 97401

　　　Attorneys for Plaintiff

Kevin C. Danielson
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Allison Granger
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Rebecca F. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on December 10, 2020, alleging an onset date of February 28, 2020. Tr. 153.[2] Plaintiff's date last insured ("DLI") is December 31, 2024. Her application was denied initially and on reconsideration.

On April 6, 2022, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 26-57. On August 3, 2022, the ALJ found Plaintiff not disabled. Tr. 10-21. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on "breathing difficulty, hormone imbalance, extreme fatigue, high blood pressure, diabetes, thyroid, [and] sleep apnea." Tr. 59. At the time of her alleged onset date, Plaintiff was 57 years old. Tr. 153. Plaintiff has a high-school education and past relevant work experience as a general clerk and accounting clerk. Tr. 52.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

2 – OPINION & ORDER

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other

3 – OPINION & ORDER

work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ noted that although Plaintiff worked after her February 28, 2020 alleged onset date, she did not engage in substantial gainful activity. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the severe impairments of asthma and obesity. Tr. 15. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 17. The ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> she can frequently climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently stoop. She can tolerate occasional exposure to workplace vibrations, and to atmospheric conditions as defined in Selected Characteristics of Occupations. She can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery.

Tr. 17. At step four, the ALJ concluded that Plaintiff can perform her past relevant work. Tr. 20. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 21.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a

4 – OPINION & ORDER

whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) partially rejecting the lay-witness statement of Plaintiff's former employer Debbie Shaw; and (3) found the opinion of Victoria Deeks, M.S., A.N.P,, to be unpersuasive.

**I.    Subjective Symptom Testimony**

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

5 – OPINION & ORDER

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff testified at the hearing that she worked part-time after her February 28, 2020, alleged onset date and was laid off in June 2021 not because of "the brain fog issue," but because she "had to be absent and off a lot because [she] just couldn't function" due to fatigue. Tr. 38, 44. She testified she "can be fine for days, several days, and then [she] can be just absolutely nothing. . . . [She] can just do [her] bodily functions, and then other than that, [she is] just a lump in a chair." Tr. 38. Plaintiff stated that level of fatigue "happens unexpectedly and [she] can't depend on [herself] to be there when [she] needed to and to do the work that [she] needed to do." *Id*. Plaintiff testified she also experiences "brain fog" when her "brain doesn't work," she "can't find my words," and she "can't think clearly." Tr. 39-40. Plaintiff stated, "there's been some improvement [in her brain fog] over the last few years of treatment, but it still happens." *Id.* Plaintiff testified she "can't remember things," has "to write everything down because [she] can't depend on [her] memory to remember things such as "taking medication," appointments, "or preparing a meal for . . . the meal committee for [her] church." Tr. 40. Plaintiff testified she

cannot do her past relevant work because she does not "trust [her] accuracy," she "can't sit in one position for any length of time," and she cannot "communicate like [she] need[s] to." Tr. 46-47. Plaintiff "can't breathe, . . . can't walk, . . . can't stand, and . . . can't sit." Tr. 47. Plaintiff sells candy at farmer's markets for four hours on Saturdays and prepares meals for her church meal committee once a month. Tr. 41, 43. Plaintiff helps her husband to put on his shoes and socks and to shower when he gets lightheaded. Tr. 42. Plaintiff provides "physical support" for her husband when he climbs in and out of the bathtub and when he dries his hair. Plaintiff noted that her husband holds on to her to keep his balance and she acts as "a human walker." Tr. 42-43.

On June 2, 2021, Plaintiff completed an Adult Function Report in which she stated she has "difficulty breathing w/any minor activity" and "fatigue caused by breathing issues." Tr. 229. Plaintiff stated that "some days only minor personal care is all [she] can do. [She] tr[ies] to work as much as able but can't do more than 8-16 HRS a week." *Id.* Plaintiff wakes up "3-4 x a might w/breathing difficulty." Tr. 230. Her breathing issues and fatigue cause "foggy brain" and she "forget[s] to pay bills or deposit money in account to cover auto pymts." Tr. 232. "Breathing issues = no energy. [She] is restricted from most all activity." Tr. 233. Plaintiff described her day as follows: "bathing, makeup + hair if able, breakfast preparation, dressing, lunch prep some days + dinner some days, errands a couple time a week, grocery pickup, church when able, work when able, housework + laundry when able. Nap required most days." Tr. 230. "[O]ther than standing or sitting [she] still ha[s] trouble breathing w/most movement. Can walk to + from car + around house, stores about ½ way before needing to rest. Have to use wheel cart somedays. [Her] brain doesn't work if [she is] tired @ all - have to have things repeated for comprehension." Tr. 234.

7 – OPINION & ORDER

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 18. Specifically, the ALJ notes as to Plaintiff's alleged problems with "brain fog," memory, and communication that medical records consistently described Plaintiff's clinical presentation as alert, cooperative, and fully oriented. *See, e.g.,* Tr. 358, 362, 380, 387, 392, 398, 405, 410, 417, 689, 705, 722, 731, 749. In March 2021 Plaintiff denied memory loss and Britain Parrish, M.D., noted Plaintiff's recent and remote memory were normal. Tr. 766. In addition, treating nurse practitioner Victoria Deeks did not note cognitive decline, problems with concentration, or "brain fog" in either the diagnosis or symptoms section of her treating source statement. Tr. 497-499. Similarly, treating nurse practitioner Jennifer Frost did not list cognitive decline, problems with concentration, or "brain fog" in either the diagnosis or symptoms section of her treating source statement. Tr. 904-07.

The ALJ noted Plaintiff reported her fatigue and sleep improved with appropriate treatment and that her medications were "effective for managing her fatigue." *See* Tr. 451, 687, 691. In October 2021 Plaintiff reported to her sleep specialist, Alejandro Diaz Chavez, M.D., that she was "doing well" and did not need any changes in her medication or treatment. Tr. 732. The ALJ also noted Plaintiff continued to work through the second quarter of 2021, well after her alleged onset date. Plaintiff also worked at farmer's markets regularly, participated in her church's meal train, and cared for her husband.

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms

because the ALJ provided specific, clear, and convincing reasons supported by substantial evidence in the record for doing so.

## II.     Lay Witness Testimony

Plaintiff alleges the ALJ erred when he failed to give legally sufficient reasons for partially rejecting the lay-witness statement of Debbie Shaw.

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. § 404.1520c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina,* 674 F.3d at 1114, *superseded on other grounds* by 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

In an undated letter Shaw noted Plaintiff worked for her "twice, each time for several years." Tr. 269. The second period of Plaintiff's employment with Shaw was from 2017 through May 2021. Shaw stated "[t]here was a notable difference in [Plaintiff's] cognitive ability in 2017 from when she left [Shaw's] employment in 2011" and Plaintiff advised Shaw that she was "experiencing issues with hormonal imbalance that affected her cognitively and physically." *Id.* Shaw noted that in 2019 Plaintiff "had serious issues with the onset of asthma," which "along with the hormonal imbalance and cognitive decline, continued to increase in severity to the point where she could not physically work a regular schedule" and went to part time, "then was unable to manage a steady part time schedule." *Id.*

The ALJ considered Shaw's statement but noted that she reported Plaintiff had cognitive issues in 2017 and issues with asthma in 2019, nevertheless, Plaintiff continued to work full time through February 2020 and then part time through May 2021. In addition, Shaw's statement was similar to Plaintiff's testimony. The Court has already concluded the ALJ did not err when he partially rejected Plaintiff's testimony. The Court also concludes on the same basis that the ALJ did not err when he partially rejected Shaw's statement.

### III.   Medical Opinion Evidence

Plaintiff contends the ALJ erred when he found Deeks' opinion to be "less persuasive." Tr. 20.

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are:

supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

On June 2, 2021, Deeks completed a Treating Source Statement noting diagnoses of "shortness of breath, muscle pain, and fatigue," which were "constant and ha[d] lasted over 12 months." Tr. 497. Deeks stated Plaintiff's symptoms were "shortness of breath, muscle pain, and fatigue," and "described [the] signs" as "positive methacholine challenge with the lowest concentration, CRX - normal, [and] CT - negative for pulmonary embolism, mild subpleural scarring." Tr. 498. Deeks checked "yes" to whether Plaintiff had "to lie down or rest periodically during the day" and noted Plaintiff "gets tired and doesn't feel that she can work a whole day." *Id*. Deeks stated Plaintiff would miss two days of work per month because of her medical problems. Tr. 499.

The ALJ found Deeks' statement to be unpersuasive on the grounds that it is not supported by the record or her treatment notes. The ALJ noted the record reflects Plaintiff complained of fatigue regularly from April 2020 through October 2020. Plaintiff also complained of fatigue in November 2020, but indicated she was not sleeping because she ran out of medication that had been "very helpful for her." Tr. 408. After a gap of several months, however, Plaintiff reported in March 2021 that her fatigue was "improving" with medication. Tr. 415. Plaintiff continued to report improvement in her fatigue and that medications and hormone therapy was effective for managing her fatigue in July and August 2021, Tr. 687, 702. In October 2021 Plaintiff reported she was "doing well" and Plaintiff did not mention fatigue during her October and November 2021 appointments with Doru Totian, M.D., treating internal medicine physician. Tr. 732, 841, 842. The ALJ also noted Plaintiff performed at least part-time work for months after her alleged onset date. Although the ability to perform part-time work does not establish Plaintiff's ability to perform "sustained, work-related physical and mental activities . . . on a regular and continuing basis despite his limitations,"[3] 20 C.F.R. § 404.1520(e), the Ninth Circuit has held that "[a]n ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Bowen v. Kijakazi*, No. 21-35600, 2022 WL 2610242, at *1 (9th Cir. July 8, 2022)(citing *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020)). The ALJ also noted Plaintiff's work at the farmer's market, her church meal train, and that she cares for her husband.

---

[3] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." Social Security Ruling (SSR) 96-8p, at *1.

On this record the Court concludes the did not err when he found Deeks' statement to be less than persuasive because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: May 14, 2024

_____
MARCO A. HERNÁNDEZ
United States District Judge

On this record the Court concludes the did not err when he found Deeks' statement to be less than persuasive because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: May 14, 2024

_____
MARCO A. HERNÁNDEZ
United States District Judge